UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THOMAS KEMPKES,

                Plaintiff,

  -v-

BRIAN M. DOWNEY, individually, MARY C. MARVIN, individually, GLENN D. BELLITO, individually, ROBERT J. UNDERHILL, individually, ANNE W. POORMAN, individually, WILLIAM H. BARTON, individually, and the VILLAGE OF BRONXVILLE, N.Y.,

                Defendants.

Case No. 07-CV-1298 (KMK) (GAY)

ORDER

---

KENNETH M. KARAS, District Judge:

      Plaintiff Thomas Kempkes ("Plaintiff"), a police officer employed by Defendant Village of Bronxville ("Bronxville"), brings this action pursuant to 42 U.S.C. § 1983, alleging that Bronxville, its police chief, and the members of its town board: (1) violated his First Amendment rights by means of a retaliatory reduction in salary; (2) violated his Fourteenth Amendment right to equal protection by means of selective prosecution with regard to institution of disciplinary proceedings; (3) violated his First Amendment rights by means of retaliatory institution of disciplinary proceedings; (4) violated his First Amendment rights by means of retaliatory deprivation of disability benefits for injuries incurred in the performance of police duties; and (5) violated his First Amendment rights by means of retaliatory denial of health insurance coverage for his spouse. Defendants move to dismiss all claims. For the reasons stated in this Order, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. Background

### A. Alleged Facts

For the purpose of this Motion, the Court accepts as true all facts alleged by Plaintiff in his Amended Complaint, which are as follows:

Plaintiff was at all relevant times an officer of the Bronxville Police Department. (Am. Compl. ¶ 3.) Beginning on or about September 6, 2002, Plaintiff received pecuniary and related benefits for injuries incurred in the performance of police duties, pursuant to New York General Municipal Law § 207-c ("Section 207-c"). (*Id.*)

On July 7, 2006, Defendant Brian M. Downey ("Chief Downey"), Bronxville Chief of Police, revoked Plaintiff's Section 207-c status and terminated benefits under it by written notice that Plaintiff was "suspended without pay pending the investigation into potential disciplinary charges being pursued against [him] . . . related to [his] failure to remain at home, while injured, on Thursday July 6, 2006." (*Id.* ¶ 6.) On or about August 21, 2006, Chief Downey instituted disciplinary charges against Plaintiff. (*Id.* ¶ 7.)

On December 13, 2006, the Bronxville Board of Trustees ("Town Board") commenced a hearing on the disciplinary charges brought by Chief Downey against Plaintiff.[1] (*Id.* ¶ 7.) At this hearing, attended by the Town Board Defendants and by Chief Downey, Plaintiff's counsel alleged that Plaintiff was being charged in retaliation for having "repeatedly expressed his concern" that the Bronxville Police Department was discriminating in its employment practices and in its law enforcement practices on the basis of gender and of race. (*Id.* ¶ 8.)

---

[1] Plaintiff identifies the members of the Town Board as Defendants Mayor Mary C. Marvin, Glenn D. Bellito, Robert J. Underhill, Anne W. Poorman, and William H. Barton (collectively, the "Town Board Defendants."). (Am. Compl. ¶ 5.)

On December 21, 2006, Plaintiff submitted a letter to each of the Town Board Defendants again stating that the Bronxville Police Department was discriminating in its employment practices and in its law enforcement practices on the basis of gender and of race. (*Id.* ¶ 9.)

Beginning with the pay period ending February 2, 2007, Plaintiff's net bi-weekly salary was reduced by approximately $570. (*Id.* ¶ 9.) Plaintiff alleges that this "unilateral reduct[ion]" was made by Chief Downey as a result of Plaintiff's accusations raised at the hearing on December 13 and in his letters of December 21. (*Id.*)

At an unspecified time, the Bronxville Police Department denied Plaintiff health insurance coverage for his spouse, "to whom he was married subsequent to December 13, 2006." (*Id.* ¶ 11.) Plaintiff alleges that this, too, was a result of Plaintiff's allegations raised at the hearing on December 13 and in his letters of December 21. (*Id.*)

Finally, Plaintiff alleges that the actions of Defendants have caused him "to suffer: pecuniary losses and benefits; a loss of Section 207-c benefits; public humiliation; public embarrassment; emotional upset; anxiety; punishment for the exercise of his rights to free speech and to petition government for the redress of grievances; and ha[ve] otherwise [] rendered [Plaintiff] sick and sore." (*Id.* ¶ 12.)

B. Procedural History

Plaintiff filed his initial Complaint on February 21, 2007. On March 26, 2007, Plaintiff filed an Amended Complaint, adding the Town Board Defendants.

On April 16, 2007, Defendants filed this Motion to Dismiss all claims. The Motion was fully briefed on May 7, 2007, and submitted to Magistrate Judge George A. Yanthis, to whom it

3

was referred for report and recommendation.[2]

On October 12, 2007, Magistrate Judge Yanthis issued a Report and Recommendation ("R&R") recommending that "defendants' motion to dismiss should be (1) granted as to plaintiff's First Amendment claim based upon the revocation of his section 207-c status and the initiation of disciplinary proceedings and (2) denied in all other respects." (R&R 8-9.)

Defendants filed timely objections to the R&R, which are as follows:

1) The R&R applied the incorrect standard of review by failing to use the plausibility standard stated in *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007);

2) The Complaint fails to state a claim upon which relief can be granted under the First Amendment;

3) The Complaint fails to state a claim upon which relief can be granted for selective prosecution/violation of equal protection;

4) Plaintiff's Section 1983 claims must be dismissed as to the individual defendants because Plaintiff fails to allege their personal involvement in any constitutional deprivation; and

5) Plaintiff's Section 1983 claims must be dismissed against Bronxville because Plaintiff failed to plead a viable claim for municipal liability under *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

Plaintiffs did not file objections and, in response to Defendants' Objections, elected to rest on the reasons set forth by Magistrate Judge Yanthis.

---

[2] This case was initially managed pursuant to the Standing Order of Chief Judge Kimba M. Wood dated December 19, 2006. (Docket No. 2.) On August 6, 2007, it was reassigned to this Court.

II. Discussion

A. Standard of Review

The Court reviews issues raised by Defendants' timely and specific Objections to the R&R under a de novo standard. *See* Fed R. Civ. P. 72(b). It reviews the remainder of the R&R for clear error only.

Defendants seek dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that it fails to state a claim.[3] The Supreme Court has recently clarified the standard for review on a Rule 12(b)(6) motion to dismiss. *See Twombly*, 127 S. Ct. at 1964-65. In so doing, the Supreme Court abandoned reliance on the oft-quoted refrain from *Conley v. Gibson* that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," 355 U.S. 41, 45-46 (1957). *Twombly*, 127 S. Ct. at 1964-69. Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965 (citation omitted), and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 1969. Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (concluding that *Twombly* requires a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is

---

[3] On the basis of Defendants' Objections, the Court reviews de novo each issue determined adversely to Defendants in the R&R. In so doing, the Court applies the *Twombly* plausibility standard, and therefore need not separately address Defendants' contention that the R&R applied an incorrect standard of review.

needed to render the claim *plausible*." (internal quotation marks omitted)). If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 127 S. Ct. at 1974.

When considering a Rule 12(b)(6) motion, a court must limit itself to facts stated in the complaint, documents attached to the complaint, and documents incorporated into the complaint. *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). A court may also consider public records. *See Tornheim v. Eason*, 363 F. Supp. 2d 674, 676 (S.D.N.Y. 2005); *see also Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (allowing defendant to include securities private placement documents with its motion to dismiss that were integral to, but not attached to, complaint). The Court will accept as true Plaintiff's allegations, and draw all plausible inferences in Plaintiff's favor. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005). At this stage, however, the Court is not concerned with weighing the evidence that would be presented at trial. *See Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir. 2005).

### B. First Amendment Claim for Retaliatory Reduction in Salary

Plaintiff's first cause of action alleges that Chief Downey reduced Plaintiff's salary in retaliation for Plaintiff's exercise of rights protected by the First Amendment. (Am. Compl. ¶ 21.) To state a claim for First Amendment retaliation under Section 1983, a plaintiff must show that: "(1) his speech was constitutionally protected; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected speech and the adverse

6

employment action." *Morey v. Somers Cent. Sch. Dist.*, No. 06-CV-1877, 2007 WL 867203, at *9 (S.D.N.Y. Mar. 21, 2007); *see also Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004). Defendants seek dismissal of Plaintiff's first cause of action on the theory that Plaintiff has not sufficiently pled the third element of the claim; that is, the requisite causal connection between the allegedly-protected speech and the alleged $570 reduction in Plaintiff's biweekly net salary. (Obj. 2, 15-18.)

To establish a causal connection sufficient to survive a motion to dismiss, the "allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action." *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003) (internal quotation marks omitted). Circumstantial evidence, such as a showing that the protected activity was followed closely in time by adverse employment treatment, is sufficient to support such an inference. *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999); *Morey*, 2007 WL 867203, at *11 (holding that allegations of protected speech followed two months later by disciplinary charges showed sufficient "close temporal proximity" to support inference). Here, Plaintiff has alleged protected speech in mid-December 2006 and retaliatory reduction in salary beginning less than two months later on February 2, 2007. As Magistrate Judge Yanthis concluded, this is sufficient for Plaintiff's retaliatory pay reduction claim to survive dismissal. Thus, Defendants' Motion to Dismiss is DENIED as to Plaintiff's first claim.[4]

---

[4] In support of their Motion to Dismiss, Defendants submit an affidavit containing what are represented to be "payroll journals for the pay period set forth in Paragraph 10 of the Amended Complaint." (Aff. of Howard M. Miller.) Defendants state that the pay change is merely the result of FICA tax withholdings. (Obj. 2.) Even if the Court was to consider Defendants' submission at this stage, the evidence submitted would be insufficient to defeat Plaintiff's claim. Defendants have offered no explanation as to why apparently-mandatory payroll deductions from Plaintiff's gross salary commenced only in 2007. A simple explanation

7

C. First Amendment Claim for Retaliatory Institution of Disciplinary Hearing

Plaintiff's second and third causes of action seek to state claims under the Fourteenth and First Amendments respectively relating to institution of disciplinary proceedings against Plaintiff. Because Plaintiff's equal protection claim depends on his First Amendment claim, the Court addresses the First Amendment claim (Plaintiff's third cause of action) first.

The Amended Complaint alleges that Chief Downey instituted a retaliatory prosecution against Plaintiff for his exercise of rights guaranteed by the First Amendment. (Am. Compl. ¶ 19.) Magistrate Judge Yanthis recommended dismissing this claim because Plaintiff "has failed to allege a causal connection between his protected speech and . . . the initiation of disciplinary proceedings against him." (R&R 5-6.) Because there are no objections to this recommendation, the Court reviews it for clear error only. Finding none, the Court adopts the recommendation.

Plaintiff's general allegations of unspecified protected speech do not suffice to create a causal inference of retaliation from close temporal proximity between any protected speech and the disciplinary hearing. Accordingly, Defendants' Motion to Dismiss is GRANTED as to Plaintiff's third cause of action for institution of a disciplinary hearing in retaliation for speech protected by the First Amendment.

---

may exist, such as a decision to extend coverage under a Section 218 Agreement. *See* 42 U.S.C. § 418(a) (governing voluntary agreements for coverage of state and local employees). But the Court is not prepared to find such an explanation without the Parties' briefing the issue, and so need not reach the question of whether it would be appropriate to do so on a motion to dismiss.

    Nevertheless, if Defendants' representation is accurate that the change in net pay observed by Plaintiff was merely due to an appropriate application of a properly-implemented extension of Social Security and/or Medicare coverage to Plaintiff and all similarly-situated state employees, Plaintiff's claim would plainly fail. Counsel to Plaintiff are reminded of their obligations to make reasonable inquiry under the circumstances to ensure that their allegations have evidentiary support or "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11(b).

D. First Amendment Claim for Retaliatory Deprivation of Section 207-c Benefits

Plaintiff's fourth cause of action is for deprivation of benefits in retaliation for his exercise of rights protected by the First Amendment. (Am. Compl. ¶ 21.) The Complaint alleges that the deprivation occurred on July 7, 2006. (*Id.* ¶ 6.) As with Plaintiff's claims regarding institution of disciplinary proceedings against him, Magistrate Judge Yanthis concluded that Plaintiff "failed to allege a causal connection between his protected speech and . . . the revocation of his section 207-c benefits." (R&R 5-6.) Because there are no objections to this recommendation, the Court reviews it for clear error only. Finding none, the Court adopts the recommendation.

Accordingly, Defendants' Motion to Dismiss is GRANTED as to Plaintiff's fourth cause of action for retaliation by withdrawal of Section 207-c benefits on the basis of speech protected by the First Amendment.

E. First Amendment Claim for Retaliatory Denial of Spousal Health Coverage

Plaintiff's fifth and final cause of action alleges improper denial of spousal health benefits in retaliation for Plaintiff's exercise of rights protected by the First Amendment. (Am. Compl. ¶ 23.) Defendants assert that the claim should be dismissed because "[nowhere] in the Amended Complaint does Plaintiff allege any causal connection between his speech and the denial of coverage." (Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Am. Compl. at 10.) Magistrate Judge Yanthis disagreed, concluding that Plaintiff "alleged a close temporal proximity between his protected speech and the denial of health benefits" sufficient to support inference of a causal connection. (R&R 7.)

Defendants object to this conclusion, arguing that because "the plaintiff made the same

9

complaints 'repeatedly' over at least a four year time period, any temporal connection to the . . . denial of health insurance to his spouse has been destroyed." (Obj. 16-18.) To support this point, they rely on the recent district court decision of *McAllan v. Von Essen*, which held that where "a party has engaged in numerous acts of protected speech over an extended period of time, the inference of causation that can be drawn from the temporal proximity between the protected speech and allegedly adverse employment actions is extremely attenuated and is insufficient to give rise to a genuine issue of fact." 517 F. Supp. 2d 672, 683 (S.D.N.Y. 2007) (quoting *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 280 (2d Cir. 1999)).

This case differs from *McAllan*, however, because the Amended Complaint here points to specific, attention-getting speech – plausibly distinct from any preceding pattern of comment and complaint – immediately prior to the alleged adverse action of spousal health benefit denial.[5] As alleged in the Amended Complaint, Plaintiff's counsel articulated a broadside attack against Chief Downey, which included serious accusations of race and gender-based discrimination, at the hearing on December 13, 2006. (Am. Compl. ¶ 8.) Plaintiff made similar claims in letters to the Town Board Defendants on December 21, 2006. (*Id.* ¶ 9.) These specific, amplified allegations plausibly contrast with any pattern of conduct implied by Plaintiff's quoted statement that he had "repeatedly . . . over his tenure" raised similar issues. (*Id.* ¶ 8.)[6] Indeed, there is

---

[5] *McAllan* is distinguished on at least one other crucial point: the *McAllan* motion was for summary judgment and the defendants had submitted "uncontroverted evidence" that the initiation of disciplinary proceedings was based on "legitimate, nonretaliatory reasons," unrelated to the plaintiff's protected speech. 517 F. Supp. 2d at 683.

[6] Plaintiff's failure to specify and amplify his descriptions of any prior pattern of allegations is, for the reasons stated above, fatal to several of Plaintiff's other claims. Defendants cannot have it both ways, however, by having the Court read the same statement in the Amended Complaint as too general to provide a basis for the other retaliation claims but

nothing in the Complaint to support Defendants' claim that Plaintiff articulated the same grievances frequently enough to render the temporal connection unremarkable. The Court reaches the same conclusion as did Judge Yanthis that the temporal connection between these acts and the denial of spousal health benefits creates sufficient inference of retaliation to survive this Motion to Dismiss.[7]

Thus, Defendants' Motion to Dismiss is DENIED as to Plaintiff's claim of retaliation by denial of spousal health insurance benefits.

F. Equal Protection Claim for Selective Prosecution

Plaintiff's second cause of action alleges that "institution and/or prosecution of the subject disciplinary charges against Plaintiff constitutes a selective prosecution and/or otherwise violates Plaintiff's right to equal protection as guaranteed by the Fourteenth Amendment." (Am. Compl. ¶ 17.) "The Equal Protection Clause [of the Fourteenth Amendment] requires that the government treat all similarly situated people alike." *Sweeney v. Leone*, No. 05-CV-871, 2006 WL 2246372, at *10 (D. Conn. July 31, 2006) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To succeed on an equal protection claim, "Plaintiff must show that: (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"

---

sufficiently specific to mute the temporal connection between Plaintiff's December 2006 speech and Defendants' actions with respect to salary reduction and spousal health benefits denial.

[7] As Judge Yanthis noted, the Amended Complaint does not specify the date on which Plaintiff was allegedly denied spousal health benefits. (R&R 6-7.) The Court infers, however, that the denial occured prior to the filing of the Amended Complaint on March 26, 2007, which added this cause of action to the initial Complaint.

*Skehan v. Vill. of Mamaroneck,* 465 F.3d 96, 110 (2d Cir. 2006) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks omitted)). Plaintiff has not claimed membership in a protected class and instead invokes a "'class of one'" theory, by which Plaintiff "'alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Sweeney*, 2006 WL 2246372, at *10 (quoting *Harlan Assocs.*, 273 F.3d at 499) (alteration in original).

Plaintiff has not alleged sufficient facts to establish the "similarly situated" element of his selective prosecution claim. *See Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (stating plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."). Plaintiff's Amended Complaint alleges that : (1) another lieutenant in the department had committed the crime of endangering the welfare of a minor; (2) an on-duty police sergeant was so impaired from certain medications that he was permitted to sleep while on duty, ignore his job duties, and receive full pay; and (3) neither officer was subject to disciplinary charges. (Am. Compl. ¶ 9). Even crediting Plaintiff's allegations regarding these two officers, neither officer is similarly situated to Plaintiff. Plaintiff accuses "Lt. Satriale" of taking an underage person to a bar, which, even if true, has no similarity to Plaintiff's alleged professional offense of failure to remain at home. Meanwhile the second officer is of a different rank (sergeant), is unnamed, and it is unclear what Plaintiff alleges he has done other than ingesting prescription medications (there is no allegation that he is doing so improperly). Thus,

12

Plaintiff has not sufficiently pled disparate treatment relative to a similarly-situated individual for his equal protection claim to survive.

In any event, because Plaintiff's equal protection claim is premised on the First Amendment violation that forms the basis of Plaintiff's third cause of action, the former coalesces with the latter. *See African Trade & Info. Ctr. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002) (holding that First Amendment and equal protection claims "coalesce" where alleged motive for disparate treatment is plaintiff's exercise of First Amendment rights); *see also Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) ("Due to the manner in which they have cast their contentions throughout this action, the plaintiffs' selective prosecution and retaliation claims 'coalesce.'" (quoting *African Trade & Info. Ctr.*, 294 F.3d at 363)). Where this is the case, the equal protection claim is dependent on the First Amendment claim; in other words, where the First Amendment claim has failed, the equal protection claim fails, too. *See id.* ("Our holding on the First Amendment retaliation claim . . . requires that we direct entry of judgment for the defendants on the plaintiffs' selective prosecution claim as well."); *Sweeney*, 2006 WL 2246372, at *11 (granting summary judgment on plaintiff's equal protection claim because the First Amendment claim on which it was premised had failed); *Levesque v. Town of Vernon*, 341 F. Supp. 2d 126, 139 (D. Conn. 2004) ("[Plaintiff's] selective prosecution equal protection claim fails because it is derivative of her First Amendment retaliation claim, which, as discussed herein fails as a matter of law.").

Thus, because Plaintiff's First Amendment claim here has failed, Plaintiff's equal

protection claim also fails.[8]  Accordingly, Defendants' Motion to Dismiss is GRANTED as to Plaintiff's second cause of action for selective prosecution by the institution of a disciplinary hearing.

    G.  Individual Liability

Defendants submit that the claims must be dismissed against Chief Downey and the Town Board Defendants because Plaintiff has failed to allege their personal involvement in any constitutional deprivation.

At least as to the remaining claims (those being:  the first cause of action for retaliatory reduction in salary and the fifth cause of action for retaliatory denial of health benefits), Plaintiff has made sufficient allegations regarding the personal involvement of Chief Downey.  Plaintiff claims that Downey instituted both the reduction in salary and the denial of health benefits in retaliation of Plaintiff's exercise of First Amendment rights – indeed, Downey's personal involvement is the essence of the retaliation claim.  As the Complaint states:  "Downey retaliated against Plaintiff and thus . . . unilaterally reduced Plaintiff's net bi-weekly salary . . . ."  (Am. Compl. ¶ 10.)  The allegation of Downey's involvement in the denial of spousal health benefits is not similarly expressed, but the Court takes it to be implied in the claim for retaliation.

Plaintiff has not, however, pled sufficient involvement of the Town Board Defendants in any of the remaining claims against them.  It is true that a supervisor may be held liable not only

---

[8] Although judgment on a First Amendment claim may cause a dependent equal protection claim to fail, the Court need not decide whether a pleading deficiency in the First Amendment claim always causes a dependent equal protection claim to fail.  Plaintiff's equal protection claim is ultimately deficient for the same reason as (rather than because) his First Amendment claim is deficient:  Plaintiff's general allegations of unspecified protected speech do not suffice to create a causal inference of retaliation from close temporal proximity between any protected speech and the disciplinary hearing.

14

for direct participation in a constitutional deprivation, but also for "failure to act on information indicating unconstitutional acts were occurring or for . . . gross negligence in failing to supervise . . . subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury." *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *see also Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). The Complaint, however, does not sufficiently plead even supervisory involvement.

With respect to the first cause of action, the Complaint states: "The Board, by reason of the service upon the Village of Plaintiff's original complaint herein, with actual knowledge of that retaliatory action, has approved, condoned and/or ratified it." (Am. Compl. ¶ 10.) Plaintiff's theory of liability appears to be that he may serve a municipality with his Complaint in February, await one month of inaction, and then in March file an Amended Complaint seeking to implicate the municipal legislators in the constitutional violation that predated the Complaint. Plaintiff has not cited any authority suggesting that this theory has validity, and the Court is aware of none. Indeed, such a theory would defeat the purpose of legislative immunity, which shields even municipal legislators, like the Town Board Members here, from personal civil liability for their legislative choices in Section 1983 actions. *See Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (concluding that "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities."); *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1998) (holding that the "doctrine of absolute legislative immunity under § 1983 applies to local legislators."); *S. Lyme Prop. Owners Assoc. v. Town of Old Lyme*, No. 00-CV-97, 2008 WL 323258, at *10 (D. Conn. Feb. 4, 2008) ("The enforcement policies may have been flawed, and the Defendant [municipal legislators] may have acted in bad faith, as is alleged by

Plaintiffs, but legislative immunity is absolute and does not depend on these considerations."); *Zdziebloski v. Town of E. Greenbush*, *N.Y.*, 336 F. Supp. 2d 194, 203 (N.D.N.Y. 2004) (holding municipal legislative immunity to preclude asserted Section 1983 claim where town board members voted to eliminate plaintiff's job); *see also Almonte v. City of Long Beach*, 478 F.3d 100, 103 (2d Cir. 2007) ("[T]he grant of legislative immunity covers all aspects of the legislative process . . . ."). Thus, there is no claim against the Town Board Defendants for retaliatory salary reduction. With respect to the fifth cause of action, the Complaint states even less, only that: "[unspecified] Defendants have further retaliated against Plaintiff by denying him health insurance coverage for his spouse." (Am. Compl. ¶ 11.) Because Plaintiff has articulated no theory (plausible or otherwise) by which the Town Board Defendants were personally involved in this alleged deprivation, or alternatively because they are protected by legislative immunity, there is no claim against them for retaliatory denial of spousal health benefits.

Therefore, the Motion to Dismiss for failure to plead personal involvement is DENIED as to Chief Downey and GRANTED as to each of the Town Board Defendants.

H. Municipal Liability for Defendant Village of Bronxville

Under *Monell v. Department of Social Services*, a municipal government may be "held liable [under Section 1983 where] action pursuant to official municipal policy of some nature caused a constitutional tort," but not simply for employing a tortfeasor. 436 U.S. at 691. Magistrate Judge Yanthis concluded that Plaintiff "sufficiently alleged the existence of a policy or custom that caused plaintiff to suffer a constitutional deprivation." (R&R 8.) Specifically, he found that the Amended Complaint "alleges (1) that the Chief of Police, with final discretionary authority, deprived plaintiff of his constitutional rights and (2) that the members of the Village's

16

Board of Trustees knowingly endorsed, ratified and approved of that misconduct." (*Id.*) Defendants object that Plaintiff has not alleged an official policy or custom, because "Plaintiff has only alleged conduct by municipal employees that are unique to him, as opposed to being part of a widespread municipal policy." (Obj. 6.)[9] This argument fails.

As the Supreme Court has explained:

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (internal footnote omitted). Here, the question really amounts to whether the challenged conduct was taken by the municipality's policymaker in an official capacity. *See Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005) ("Where a city official has final authority over significant matters involving the exercise of discretion, his choices represent government policy." (internal quotation marks omitted)). The relevant issue, then, as to Bronxville's municipal liability is whether Chief Downey was a municipal policymaker. The Court concludes that this issue is not yet ripe for determination.

Defendants' Objections contend that it is resolvable as a matter of law that "any actions taken by the Chief of Police in this matter did not constitute a municipal policy . . . ." (Obj. 8.)

---

[9] Defendants also objected to the conclusion of Magistrate Judge Yanthis that the Town Board could have ratified Chief Downey's institution of disciplinary proceedings simply by hearing Plaintiff's counsel's opening statement. (R&R 8-10.) Because the Court dismisses Plaintiff's causes of action regarding the institution of disciplinary proceedings on other grounds, discussed *supra*, it need not reach this argument here.

But Defendants' case citations do not support this conclusion. To support their proposition, Defendants point to *Birmingham v. Ogden*, in which Judge Colleen McMahon determined that a particular police chief was not a municipal policymaker. 70 F. Supp. 2d 353, 373-74 (S.D.N.Y. 1999). Crucially, the question in *Birmingham* of whether the police chief for the City of Middletown was a municipal policymaker was decided only on summary judgment. If there is legal authority making clear that the Bronxville police chief is not a final policymaker on the relevant issues, Defendants have not called it to the attention of Magistrate Judge Yanthis or to the Court. Although Defendants may be able to make such a showing at the summary judgment stage, it is inappropriate for the Court to make such a determination on a motion to dismiss.

Ultimately, it is Plaintiff's burden to show as a matter of law that Chief Downey was the final policymaker for Harrison on this issue. *See Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000) (holding that burden was correctly placed on Plaintiff at summary judgment). It remains to be seen how Plaintiff will meet this burden but, because the Court cannot now conclude that Chief Downey was not a final policymaker for Harrison, Defendants' Motion to Dismiss Defendant Bronxville is DENIED.

III. Conclusion

In summary, the Court grants Defendants' Motion to Dismiss as to: (1) Plaintiff's second cause of action for selective prosecution on the basis of protected speech; (2) Plaintiff's third cause of action for First Amendment retaliation by institution of disciplinary hearing; (3) Plaintiff's fourth cause of action for First Amendment retaliation by 207-c benefits deprivation; and (4) individual liability of each of the Town Board Defendants.

Thus, the surviving claims are: (1) Plaintiff's first cause of action for First Amendment retaliation by retaliatory pay reduction; and (2) Plaintiff's fifth cause of action for First Amendment retaliation by denial of spousal health insurance benefits. The only remaining Defendants are: (1) Brian Downey, individually; and (2) the Village of Bronxville.

For the reasons stated in this opinion, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to terminate the pending motion (Docket No. 14) and to terminate Mary C. Marvin, Glenn D. Bellito, Robert J. Underhill, Anne W. Poorman, and William H. Barton as Defendants in this case.

SO ORDERED.

Dated:   March 31, 2008
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List

By ECF:

Jonathan Lovett, Esq.
Drita Nicaj, Esq.
Lovett & Gould
222 Bloomingdale Road, Suite 305
White Plains, N.Y. 10605
jlovett@lovett-gould.com
dnicaj@lovett-gould.com

Howard M. Miller, Esq.
Rains & Pogrebin, P.C.
210 Old Country Road
Mineola, New York
hmiller@bsk.com


Copy To:

The Honorable George A. Yanthis
United States Magistrate Judge